CHARLES HATHAWAY et al., Appellants, *v.* THE COUNTY OF DELAWARE, Respondent.

1. MONEY PAID UNDER MISTAKE OF FACT, WHEN RECOVERABLE. Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be inequitable to require him to refund, and in such a case the burden of proving that fact rests upon the party resisting the payment.

2. MONEY PAID TO COUNTY UPON FORGED NOTE, PURPORTING TO BE THAT OF THE COUNTY, UNDER BELIEF THAT IT WAS A LOAN. The proceeds of a draft payable to a county treasurer, obtained by his predecessor in office, who was in default, upon a note forged by him purporting to be that of the county, by reason of the latter's representation that it was a loan to the county, and paid over to it by him on account of his personal indebtedness thereto, may be recovered by the party paying them from the county, as paid under a mistake of fact, where it does not appear that the county's claim against the defaulter or his sureties has been in any manner jeopardized or impaired.

*Hathaway* v. *County of Delaware*, 103 App. Div. 179, modified.

(Argued May 4, 1906; decided June 12, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 29, 1905, which affirmed so much of a judgment of the court at a Trial Term as dismissed the complaint as to the first cause of action and reversed so much thereof as directed judgment for the plaintiffs on the second cause of action, and granted a new trial as to said second cause of action.

The facts, so far as material, are stated in the opinion.

*Alfred B. Cruikshank* for appellants. The reversal of the judgment in favor of plaintiffs, upon the second cause of action, was error. Plaintiffs are entitled to recover with interest the proceeds of their check for $5,000 paid to the treasurer of Delaware county. (*Sims* v. *Trust Co.*, 103 N. Y. 472; *Gerard* v. *McCormick*, 130 N. Y. 261; *Cohnfield* v. *Tanenbaum*, 176 N. Y. 126; *Bank of New York* v. *A. D. & T.*

*Co.*, 143 N. Y. 559; *Casey* v. *Pilkington*, 83 App. Div. 91; *R. & C. T. Co.* v. *Paviour*, 164 N. Y. 281.)

*Edwin D. Wagner, Charles L. Andrus* and *George A. Fisher* for respondent. The reversal of the judgment by the learned Appellate Division upon the $5,000 check delivered by plaintiffs to Woodruff was correct. (*G. Nat. Bank* v. *State of New York*, 141 N. Y. 379; *C. Nat. Bank* v. *Faurot*, 149 N. Y. 532; *Nassau Bank* v. *Bank of Newburgh*, 159 N. Y. 456; *Hatch* v. *Nat. Bank*, 147 N. Y. 184; *Justh* v. *Nat. Bank*, 56 N. Y. 478; *Stevens* v. *Board of Education*, 79 N. Y. 183; *Dyke* v. *Drexel*, 11 App. Div. 77; 155 N. Y. 637.)

CULLEN, Ch. J. As to the first cause of action we content ourselves with stating our concurrence in the view of the Appellate Division and of the Trial Term, that the plaintiffs failed to establish that the money which they sought to recover was appropriated to the discharge of valid obligations of the defendant, and that, therefore, as to this cause of action the judgment below should be affirmed. (For the facts relating to this claim see report of the case in 103 App. Div. 179.)

As to the second cause of action we think that the decision of the Trial Term was correct and the action of the Appellate Division in reversing the judgment awarded by the Trial Term was erroneous. The facts on which this claim was founded are as follows: Prior to January 1st, 1900, one Woodruff was the county treasurer of Delaware county — the respondent in this action — and was a defaulter in his trust. On that day he was succeeded as county treasurer by Hugh Adair. About May 1st, 1900, Adair discovered that Woodruff was indebted to the county and demanded payment of the debt. Thereupon Woodruff presented to the plaintiffs what purported to be a note of the county of Delaware and to be executed by Hugh Adair, its treasurer, under authority of the board of supervisors, for the sum of $5,000 and interest, payable February 1st, 1901. The signature of Adair

24

to this note was forged by Woodruff. Woodruff had dealt with the plaintiffs during his incumbency of the office of county treasurer and had borrowed for the county, on what either were or were assumed to be its obligations, several sums of money. On the presentation of the forged note referred to Woodruff represented that he was obtaining the loan for the county. The plaintiffs thereupon drew their check to the "order of Hugh Adair, county treasurer of Delaware County," and delivered it to Woodruff for transmission to the county treasurer. Woodruff turned the check over to Adair on account of his personal indebtedness and it was received by Adair as a payment on that account, he being ignorant of the means by which Woodruff had obtained it. The money was collected and went into the treasury of Delaware county. The plaintiffs on discovering the forgery demanded the return of the money, which being refused they instituted this action.

On the trial neither party asked for the submission of any question to the jury, and if the evidence presented any question of fact that question must be considered as decided by the court in favor of the plaintiffs; a finding which it was not within the power of the Appellate Division to disturb, for the appeal to that court was solely from the judgment. (*Alden* v. *Knights of Maccabees,* 178 N. Y. 535.)

Plaintiffs sought to recover this money as paid under a mistake of fact. The rule as to such payments is thoroughly settled in this state. "Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund" (*Nat. Bank of Commerce* v. *Nat. Mechanics' Banking Assn.,* 55 N. Y. 211), and if circumstances exist which make such recovery inequitable, the burden of proving that fact rests upon the party resisting the payment. (*Mayer* v. *Mayor, etc. of N. Y.,* 63 N. Y. 455; *Phetteplace* v. *Bucklin,* 18 R. I. 297.) That the plaintiffs paid their money under a mistake of fact, to wit,

that they had received a genuine obligation of the defendant, is unquestioned. It does not appear that the defendant's claim against Woodruff or his sureties has been in any manner jeopardized or impaired. On final analysis the transaction is simply this: The plaintiffs paid money to the defendant as a loan. The defendant received it as a payment on the debt of Woodruff. Though the fault or misfortune which led to this mistake was the plaintiffs' in failing to discover the forgery, that no more than negligence can bar their right to recover, unless by that payment the situation of the defendant has been altered to its detriment. Generally in actions of this kind the mistake under which money is paid is a mutual one as to the existence or non-existence of a fact which justifies or requires the payment. It is not essential, however, that the mistake should be of that character. The case at bar is on all fours with that of *Mayer* v. *Mayor*, *etc. of N. Y.* (*supra*). In that case the plaintiff paid the city of New York an assessment for a local improvement upon an adjoining lot instead of the assessment on his own. The fault or negligence by which the payment was made on the wrong lot was the plaintiff's, yet it was held that he was entitled to recover back the money so paid, it not appearing that by the payment the city had lost its lien upon the lot, the assessment of which had been paid. Judge ANDREWS said: "The city received the money upon a lawful demand, but from a person who was not legally liable to pay it, and we do not find that the circumstance that money paid by mistake is received upon a valid claim in favor of the recipient against a third person prevents a recovery back, provided the claim against the party who ought to pay it is not thereby extinguished or its collection prevented." The case is decisive of the one before us, unless under the facts some other rule conflicting with or modifying the general rule is applicable to this case.

The learned judge who wrote for the Appellate Division recognized the principle that money paid under a mistake of fact may be recovered back, and would have upheld the judgment for the plaintiffs had he not deemed the case con-

trolled by the decision of this court in *Goshen Nat. Bank* v. *State of N. Y.* (141 N. Y. 379). That case and the earlier decisions on which it is founded (*Justh* v. *Nat. Bank of Commonwealth*, 56 N. Y. 478; *Stephens* v. *Bd. of Education of Brooklyn*, 79 id. 183; *Southwick* v. *First Nat. Bank*, 84 id. 420) proceed on the primary proposition that "Money has no earmarks" and that the possession of money vests the title in the holder as to third persons dealing with him and receiving it in good faith in the due course of business, and upon the secondary principle that where money is transferred by checks the same rule obtains as where payment is made in coin or bills. In the *Justh* case a person had obtained a loan from the plaintiff on altered and forged bonds. The money was advanced by a check to the order of the borrower, who deposited it in the defendant bank. Thereafter by a check on his deposit the forger paid the defendant a loan which he had obtained from it. In the *Stephens* case one Gill obtained from the plaintiff money on a forged mortgage and the check was deposited in Gill's bank and collected. Thereafter Gill paid the defendant a debt he owed it by a check on his own bank. It was held that the plaintiffs could not recover, but it is to be observed that in each case the plaintiff intended to give the money to the borrower, that the check was given for the purpose of paying the borrower, and when deposited and collected it was the same as if payment had been made in the first instance in money. The same is true of the checks given by the borrowers to their creditors. When the money was collected thereon it was the same as if the original payments had been made in money. There was not in any respect a diversion of the checks. Each served the exact purpose for which it was drawn. The latest case in this court is *Nassau Bank* v. *Nat. Bank of Newburgh* (159 N. Y. 456) and is of a similar character. The crucial distinction between those cases and the present one lies here. There was an earmark on · the money which the defendant received and the plaintiffs' check was diverted in that, while it was given as a loan to defendant, it was used to pay Woodruff's debt.

Had the plaintiffs given Woodruff money and the defendant received it in good faith without knowledge how it was obtained, doubtless the plaintiffs could not recover. I assume that if they had given a check to Woodruff's order the money could not be reclaimed after payment even if plaintiffs could have successfully resisted an action brought on the check. (*Southwick* v. *First Nat. Bank, supra,* opinion pp. 434, 435.)    But that is not the present case.    The check was drawn by the plaintiffs to the order of the defendant. It imported on its face that the money represented by it was the property of the plaintiffs, and that they, not Woodruff, were paying it to the defendant. (*Sims* v. *U. S. Trust Co.,* 103 N. Y. 472; *Bristol Knife Co.* v. *Nat. Bank of Hartford,* 41 Conn. 421.)    Woodruff had no apparent title to the check. He was merely the agent of the plaintiffs for the purpose of delivering it to the defendant. It is not necessary to consider the ostensible or apparent authority of Woodruff as to the directions he might give the defendant for the disposition of the proceeds. That question was a vital one in the *Sims* and the *Knife Co.* cases, because in each case the defendant had not only collected the checks, but on the faith of the instructions received from the agent, disposed of the proceeds. In those cases the defendants were held liable notwithstanding the payment of the money in good faith. The decisions proceeded on the circumstances of the case and the character of the business.

Nor is it necessary to consider whether the rule that one who holds money or property as agent, trustee, executor, administrator, guardian or partner has no apparent authority to dispose of it in payment of his own debt (*Gerard* v. *McCormick,* 130 N. Y. 261; *Rochester & C. T. R. Co.* v. *Paviour,* 164 id. 281) applies to one intrusted with a check for delivery to another. These questions would be important had the defendant parted with anything on the faith of the check. The *Sims* case and the *Knife Co.* case are cited as authority (if authority be necessary) for the single proposition that the defendant was chargeable with knowledge that the

moneys to be transferred by the check were the moneys of the plaintiffs. Therefore, we have in this case a payment not made by Woodruff, but made by the plaintiffs, and as to which the ordinary rule that money paid by mistake may be recovered applies.

To return to the case of the *Goshen Nat. Bank* (*supra*). There the cashier of the plaintiff was also the county treasurer of Orange county. He paid the comptroller the state taxes by a check drawn by him as cashier of the plaintiff upon the Importers and Traders' Bank of New York city. It was within the power and a part of the duty of the cashier to issue such checks to customers who might pay the bank therefor. But in the instance of the payment to the comptroller the issue of the check was simply an embezzlement of the funds of the bank. The bank sought to reclaim these funds, and in answer to that claim this court held, *1st*, that there was no diversion of the check, because it was issued for the very purpose of paying the comptroller the state taxes, and *2nd*, that by reason of the peculiar character of cashier's checks and their general use in the commercial world they were to be regarded substantially as the money which they represented. It was there said by Judge PECKHAM: " When the comptroller received this draft he had the right, in the absence of any other notice than its form, to regard it as the property of the cashier, regularly in his possession and proper to be used in payment of the taxes due at that time." This presumption cannot be extended to the case of ordinary checks of the depositor drawn on his bank. On the contrary, if in this case the money belonged to Woodruff and not to the plaintiffs, the presumption is that the check would have been drawn to Woodruff's order and not to that of the defendant. Possession of a bill or note unindorsed by the payee is not of itself evidence of title. It may have been acquired by fraud or theft. (Daniel on Neg. Instruments, § 574.)

The judgment appealed from so far as it affirmed the judgment of the trial court dismissing the first cause of action should be affirmed, but so far as it reversed the judgment for

the plaintiffs on the second cause of action should be reversed and such part of the judgment of the trial court reinstated ; neither party to recover costs in the Appellate Division or in this court.

O'Brien, Haight, Vann, Werner, Willard Bartlett and Hiscock, JJ., concur.

Judgment accordingly.